Eselin v. State.

---

GEORGE ESELIN V. STATE OF NEBRASKA.

FILED OCTOBER 26, 1925.    No. 23854.

False Pretenses: PROOF: INTENT. When, on the trial of one charged with obtaining property by false pretenses, the evidence fails to show that, in performing the acts charged, defendant entertained the criminal intent to defraud the complaining witness of his property, a conviction cannot be sustained.

ERROR to the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Reversed and dismissed.*

*Barney W. Gill,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lee Basye, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

MORRISSEY, C. J.

In the district court for Douglas county defendant was convicted of a violation of section 9892, Comp. St. 1922, and from this conviction he prosecutes error to this court.

In April, 1922, defendant and one John M. Kemp entered into an agreement in writing wherein it was provided that Kemp should convey certain real properties in Omaha, subject to incumbrances, to defendant, and defendant should convey certain lands, subject to incumbrances, in Thomas county, to Kemp. The title to the property which Kemp agreed to convey was held in the name of his wife, Mary T. Kemp, and the property which defendant agreed to convey was said to stand in the name of one Don E. DeBow, a friend or silent partner of defendant. Following the execution of this agreement, Kemp stood willing to convey to defendant all the properties covered by the written agreement, but one parcel thereof was so heavily incumbered that defendant did not desire to receive the conveyance and whatever interest either party had in the property was subsequently extinguished by foreclosure proceedings. So far as that property is concerned it need not be further considered. Kemp and his wife executed and delivered a deed, according to the written agreement, to the other property, which is denominated "The House of Hope." This property was also heavily incumbered. It is claimed by defendant that the incumbrances equalled the value of the property. A consideration of all the evidence, direct and circumstantial, convinces us that this claim is approximately correct.

On receipt of the deed from Kemp, defendant delivered to him a quitclaim deed, running from DeBow, and covering the land in Thomas county. Each deed exchanged was delivered without the name of the grantee being inserted in the instrument. This appears to have been the custom followed by both Kemp and Eselin, who may be denominated traders. After having accepted the quitclaim deed to the Thomas county land, Kemp claims to have returned to the office of defendant and complained because the deed de-

livered was a quitclaim deed, whereas he desired a warranty deed. Kemp testified that he demanded the return of the deed which he had delivered covering the Omaha property, and that defendant then informed him that the deed to the Omaha property had already been delivered to one Acker. While complaint is made of the form of the conveyance of the Thomas county land, the prosecution rests upon a different basis. Although defendant Eselin was the true owner of the land in Thomas county, the title had been taken in the name of DeBow. This fact had been made known to Kemp and no complaint is made thereof, but the following circumstances constitute the basis of the complaint.

Prior to the time when Kemp and Eselin began their negotiations, Eselin had been involved in litigation and a judgment had been entered against him in the district court for Douglas county. Eselin prosecuted an appeal from that judgment to the supreme court of Nebraska, and in connection with that appeal, executed a supersedeas bond. In order to induce the Massachusetts Bonding & Insurance Company to become a surety upon this supersedeas bond, defendant had, in July, 1921, caused DeBow to execute a deed, absolute in form, which purported to convey title to the land in Thomas county to the Massachusetts Bonding & Insurance Company. This deed had been placed on record in Thomas county before the contract for exchange of properties was made between Kemp and defendant. The deed of conveyance to the Massachusetts Bonding & Insurance Company constitutes the basis for this prosecution. Kemp testified that he did not know of the deed of conveyance to the Massachusetts Bonding & Insurance Company at the time he accepted the quitclaim deed, while defendant testified that he made known to Kemp the existence of the deed, although he was himself in ignorance of the fact that the deed had been recorded. The verdict may be said to have settled this controverted question of fact according to the contention of Kemp. However, this being a criminal prosecution, before the judgment can be upheld, a felonious in-

tent on the part of Eselin must be established. This has made it necessary to examine the entire record and to consider the actual situation of the parties. Kemp and Eselin engaged in trading, not only with one another, but with others, properties, or so-called equities in properties. From the testimony of the only disinterested competent witness on the subject, it appears that the property known as "The House of Hope," the deed to which was given to Eselin, had little, if any, value above the incumbrances resting upon it at the time the deed was delivered. Soon thereafter Kemp again became the owner of the property by exchanging his promissory note in the sum of $125, which upon the trial of this case he admitted he had never paid, and claimed it was understood that he should not be called upon to pay, and an interest or equity in a contract covering a small parcel of land in the suburbs of Omaha, his interest in this land not being shown to be of any value. When these facts are considered in connection with the testimony of the disinterested witness who stated that "The House of Hope" property was worth an amount which was approximately the amount of the incumbrances against it, we may, we think, assume that Kemp had little or no equity in the premises. These facts may not be a direct refutation of his testimony as to the value of the property, but they are circumstances which may be taken to explain the general conduct of the parties. Kemp would be more likely to exchange a deed to his property for the Thomas county land, with a contingent liability upon it, than he would be if he owned a substantial equity in the premises. Furthermore, it appears that no liability to the Massachusetts Bonding & Insurance Company ever arose. The judgment which had been superseded had been set aside on appeal, and, although at the time of the trial the title still stood in the name of the insurance company, its agent testified in effect that the company was merely awaiting the formal disposition of the litigation, when it would willingly surrender any claim that it had under the deed. Of course, this circumstance did not make good the title which DeBow was supposed to hold

at the time Eselin was negotiating with Kemp, but it is a circumstance worthy of consideration when we come to pass upon the conduct of the parties and determine the presence or absence of a guilty intent. There is no evidence that either party suffered any substantial loss by the trade or because of the confused condition of the title to the Thomas county land. Stupidity rather than cupidity is reflected from the record. There is not sufficient evidence of a felonious intent on the part of defendant to sustain the verdict.

The judgment of the district court is, therefore, reversed and set aside, and the information dismissed.

REVERSED AND DISMISSED.